## A02A1478. SMITH v. THE STATE.
(571 SE2d 817)

Ruffin, Presiding Judge.

A jury found Thomas E. Smith, Jr. guilty of three counts of armed robbery and one count of aggravated assault. The trial court denied Smith's motion for new trial, and Smith appeals. Smith challenges the sufficiency of the evidence and the denial of his motion for a continuance. Smith also asserts that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

On appeal, Smith no longer enjoys a presumption of innocence, and the evidence must be viewed in a light most favorable to the jury's verdict.[1] When so considered, the evidence established that, on October 25, 1999, Smith and Hayworth Gorham robbed a branch of the Citizens Trust Bank. As the robbery commenced, Smith pointed a 9 mm handgun at the bank security guard and ordered him to surrender his firearm. The guard complied, and Smith then brandished both weapons. Meanwhile, Gorham jumped atop a teller counter and demanded currency in large denominations from several tellers. Smith and Gorham escaped in a car parked nearby. As he fled, Smith dropped a baseball cap that he was wearing. The bank robbery remained unsolved for several months.

On December 8, 1999, Gorham entered a Subway Sandwich Shop, pointed an automatic pistol at Sonia Kherani, the employee at the register, and demanded that she open the cash drawer. Kherani refused, and Gorham cocked his pistol and repeated his demand. When Kherani screamed for her manager, Gorham left the Subway and fled in a silver car that was also occupied by Smith. A bystander wrote down the license plate number.

About 30 to 40 minutes after the unsuccessful robbery at Subway, Smith and Gorham entered a nearby Wendy's restaurant. Gorham pointed a gun at the cashier and demanded money. The cashier handed Gorham the cash drawer, and Smith and Gorham fled. Unbeknownst to the robbers, three DeKalb County plainclothes detectives were dining at the Wendy's during the armed robbery.

---

[1] See Pollard v. State, 230 Ga. App. 159 (495 SE2d 629) (1998).

After identifying themselves as police officers and unsuccessfully ordering the perpetrators to stop, the officers pursued them. Smith and Gorham ran toward the same silver car seen at Subway. With the detectives chasing them, Smith and Gorham ran past the silver car toward an apartment complex. During the chase, Gorham fired his gun at the pursuing officers and dropped the cash drawer. Police captured both men as they hid in the apartment complex. When apprehended, Smith was wearing an empty gun holster underneath his pants.

After his arrest, Smith declined to make a statement to police, but Gorham decided to do so. Gorham described the place he had dropped the gun during the chase. After admitting his involvement in the events at the Subway and Wendy's and implicating Smith as his accomplice, Gorham also stated that he and Smith had committed the unsolved robbery at the Citizens Trust Bank in October. Detective Patrick Sheirling testified that Gorham said, "Look, I did the Citizens and Trust, me and [Smith] did. I'm the one that jumped on the counter. [Smith] had the gun. We got ten g's. I'm tired. Put me [in] jail."

The next morning, investigators recovered the gun Gorham dropped at the place he told them they would find it. By tracing the serial number, investigators verified that this was the same gun stolen from the security guard during the Citizens Trust Bank robbery. Police also discovered that the license tag on the silver car parked behind Wendy's, which they traced to Gorham's mother, was the same tag number recorded by the bystander following the Subway robbery.

Gorham pled guilty to charges arising from his involvement in these crimes and testified against Smith. He testified that Smith waited for him outside with the car during the Subway robbery. Gorham also reluctantly admitted that Smith was with him during the Wendy's armed robbery. Gorham, however, developed gaping lapses in memory about the bank robbery and the specific details of the Subway and Wendy's robberies. The State was then permitted to impeach Gorham with his guilty plea transcript and custodial statement. In his custodial statement, Gorham admitted that he and Smith had gone to Subway to rob it and that Smith "gave [him] a gun before [he] went in."

The Citizens Trust Bank security guard testified at trial and identified Smith as the robber who forced him, at gunpoint, to surrender his weapon. The guard also identified the pistol found after the Wendy's armed robbery as the gun taken from him during the bank robbery. None of the other witnesses to the bank robbery were able to identify Smith at trial, but a bank surveillance camera produced blurry photographs of the robbers. In addition, hairs removed

from the baseball cap recovered outside the bank were tested by the Georgia Bureau of Investigation and found to be consistent with Smith's hair. The Wendy's cashier identified Smith in court as one of the two men who robbed Wendy's.

Based on this evidence, the jury found Smith guilty of the armed robbery of Citizens Trust Bank, the bank security guard, and Wendy's restaurant. The jury also found Smith guilty of aggravated assault on Kherani, the Subway cashier.

1. Smith contends that there was insufficient evidence to sustain his convictions for the bank robbery and the armed robbery of the security guard. He claims the testimony of Gorham, his co-indictee, was not sufficiently corroborated.

OCGA § 24-4-8 requires that accomplice testimony be corroborated in felony cases where the only witness is the accomplice. But only slight evidence from an extraneous source as to a defendant's identity and participation is needed to corroborate an accomplice's testimony.[2] And, such evidence may be entirely circumstantial.[3]

Notwithstanding Smith's claim to the contrary, his convictions did not hinge solely on Gorham's testimony. In addition to Gorham's statement implicating Smith as the gunman who took the security guard's gun, at trial the guard identified Smith as one of the two bank robbers. In addition, the baseball cap dropped by the gunman was scientifically linked to Smith. The evidence further showed that Smith gave Gorham a gun before the incidents at Subway and Wendy's, and the gun Gorham discarded after the Wendy's robbery was the weapon taken from the bank security guard. Finally, a still photograph of the gunman made from the bank surveillance videotape was shown to the jury. This evidence, though partly circumstantial, was sufficient to corroborate the testimony of Smith's accomplice and to sustain Smith's convictions for robbing the bank and the security guard.[4]

2. Smith asserts that the evidence was insufficient to sustain his conviction for the aggravated assault of the female cashier at Subway. Again he claims that the State failed to sufficiently corroborate Gorham's statements regarding his involvement in the assault. He further argues that, because the victim did not testify, the State failed to prove her identity. We disagree.

The transcript shows that Gorham told police that he and Smith went to Subway to rob it and that, although Smith did not go inside, he gave Gorham the gun used to assault the Subway cashier. This statement was corroborated by evidence showing that, shortly after

---

[2] See *Parker v. State*, 249 Ga. App. 509, 511 (1) (548 SE2d 475) (2001).
[3] See *Chergi v. State*, 234 Ga. App. 548, 550 (4) (507 SE2d 795) (1998).
[4] See *Telfair v. State*, 234 Ga. App. 444, 445 (507 SE2d 195) (1998).

the Subway incident, Smith and Gorham robbed a Wendy's restaurant, and the gun used by Gorham in that robbery was the same weapon Smith took from the security guard during the bank robbery. In addition, after the Wendy's robbery, Smith and Gorham were observed running toward the same silver car which a witness saw fleeing from the Subway. Finally, when Smith was arrested, he was wearing an empty gun holster. This circumstantial evidence corroborated Gorham's statements that Smith gave him the gun used in the Subway aggravated assault and that Smith was with him around the time of the incident.

The evidence also showed that the cashier, Kherani, was the aggravated assault victim. Kherani was unavailable to testify, having relocated to India. But under the res gestae exception to the hearsay rule, the trial court permitted Officer James Ballard to testify about the information he obtained when he first arrived at the Subway shop. According to Ballard, he went into the Subway to buy a sandwich, and the cashier told him that a man had just attempted to rob the store. The cashier, identified as Kherani, informed Ballard that the perpetrator pointed a pistol at her and ordered her to open the cash drawer. Kherani further reported that the perpetrator fled the scene after she yelled for her manager. This evidence, combined with Gorham's statement, and the other evidence corroborating his statement, was sufficient to sustain Smith's conviction for aggravated assault.

3. During the trial, it was discovered that a Federal Bureau of Investigation agent had shown the bank security guard a photographic array of suspects in an effort to identify the bank robbers. That array did not include a photograph of Smith. Nevertheless, the security guard identified an individual in one of the photographs as the robber who had jumped on the counter. Smith now asserts that the trial court erred in not continuing the trial following this revelation.

The record shows that neither the prosecutor nor defense counsel knew before trial about this misidentification until the security guard revealed that fact at trial. Afterward, to allow further investigation into a possible discovery violation, the trial court recessed the proceedings until the next morning, when Smith requested a continuance or, in the alternative, a mistrial. Outside the jury's presence, the special agent in charge of the FBI investigation of the bank robbery testified that the FBI's file, which included the array, had not been provided to any county officials.

The FBI agent then testified before the jury that the bank security guard had been shown a photographic array that did not include photographs of Smith or Gorham. The agent recounted how the

security guard had seemed "certain" that one individual depicted in the array was a "dead ringer" for the robber that jumped on the teller counter. The agent explained that after Gorham confessed to the bank robbery, federal authorities opted not to retain the case because Gorham was a minor at the time of the crimes. She reiterated that she had never told the district attorney's office about the photographic array.

Here, the FBI agent responsible for creating the photographic lineup appeared at trial and was subject to a thorough and sifting cross-examination. Defense counsel was able to expose and exploit the security guard's misidentification. No evidence showed that the State knew about the misidentification prior to trial. Under these circumstances, the trial court did not abuse its broad discretion in refusing to grant the continuance.[5]

4. Smith asserts five reasons why he was denied effective assistance of counsel. A defendant claiming ineffective assistance of counsel must establish not only that counsel's performance fell below an objective standard of reasonableness, but also that a reasonable probability exists that, but for counsel's deficiency, the result of the trial would have been different.[6] In making this showing, the defendant must overcome the strong presumption that trial counsel's actions fell within the broad parameters of reasonable professional conduct.[7] Smith has not carried his burden.

(a) Smith claims that his trial counsel was ineffective in failing to adequately rebut the State's forensic hair comparison evidence. At the motion for new trial hearing, trial counsel testified that she obtained the GBI report well before trial, investigated the crime lab's testing procedures, secured funds for an independent laboratory analysis, and requested a continuance to conduct further testing. Although the independent laboratory did not perform separate testing, Smith now speculates that the outcome of his trial would have been different had this information been procured. Smith has made no affirmative showing of prejudice, however, and the record indicates that, at trial, defense counsel thoroughly cross-examined the State's hair comparison expert about the deficiencies in hair comparison testing. The trial court did not err in failing to grant a new trial on this ground.

(b) Smith also complains about his counsel's failure to discover, before trial, that the bank security guard had identified someone else in the FBI's photographic lineup. But the record shows that the FBI

---

[5] See *Hicks v. State*, 221 Ga. App. 735, 736 (2) (472 SE2d 474) (1996).
[6] See *Williams v. State*, 258 Ga. 281, 286 (7) (368 SE2d 742) (1988).
[7] See *Turner v. State*, 273 Ga. 340, 342 (2) (541 SE2d 641) (2001).

did not release that information, and the bank security guard did not disclose it to defense counsel or the State before trial. Smith points to no evidence that would remotely suggest that his own counsel was at fault in not discovering the information until the security guard revealed it at trial. In any event, counsel took appropriate measures to expose the bank guard's misidentification. We find no error on this ground.

(c) Smith next claims that his counsel was ineffective because she failed to discover that witnesses at the bank could not identify him or did not believe he was the gunman. But the record shows that defense counsel moved for a mistrial after a witness informed the trial court, through another attorney, that she did not believe Smith was one of the bank robbers. Counsel then conducted additional cross-examination of the bank witnesses to elicit testimony as to their uncertainty and doubts about Smith's involvement in the bank robbery. We find that trial counsel acted reasonably in exposing deficiencies in the State's evidence identifying Smith as one of the bank robbers. And, Smith has not shown that the outcome of his trial would have been different had counsel discovered these deficiencies earlier.[8]

(d) Smith complains that his counsel failed to object to Detective Sheirling's hearsay testimony about the gun Smith took from the bank security guard which was found by police near the site of the armed robbery at Wendy's. In addressing a one-digit discrepancy in the serial number listed on the purchase paperwork for the gun and the serial number on the gun itself, Sheirling testified, without objection, that he had contacted the manufacturer and obtained the correct serial number. Even if Sheirling's testimony was objectionable, Smith has not shown any likelihood that the outcome of his trial would have been different had trial counsel objected to it. The bank security guard positively identified the gun at trial by make, model, and serial number as the one stolen from him during the armed robbery. Furthermore, other testimony established that, on the morning after the Wendy's robbery, investigators found the gun exactly where Gorham said he had dropped it. Any deficiency in trial counsel's performance, therefore, was harmless.

(e) Smith also contends that his counsel rendered ineffective assistance by failing to object to improper character testimony elicited from Detective Sheirling, who testified about his belief that Smith and Gorham had committed other armed robberies.

Sheirling testified that, after listening to Gorham's remarks during the custodial interview regarding the Subway and Wendy's inci-

---

[8] See *Williams*, supra.

dents, he left the room to pull a case file on an unsolved bank robbery. He explained:

I was reading through that [case file] and getting a description of the suspect because, with our experience being patrolmen and detectives, we knew that there was no way these two individuals had done an armed robbery tonight, two of them, and shot at police officers and this was the very first crime they had ever committed. So we wanted to interview them and ask them about any other armed robberies that they had committed.

Sheirling further testified that after he returned to the interview room, Gorham blurted out that he and Smith had committed the Citizens Trust Bank robbery.

It is not immediately clear why defense counsel did not object to this testimony. However, pretermitting whether counsel should have objected, no reasonable probability exists that the outcome of the trial would have been different had an objection been interposed.[9] Gorham implicated Smith in the crimes that occurred at Subway, Wendy's, and the bank, and Gorham's custodial statement was admitted as substantive evidence. The State presented other evidence to corroborate Gorham's statements and to establish Smith's guilt. Smith has not shown why, in light of this evidence, the trial court clearly erred in finding that he was not denied effective assistance of counsel on this ground.[10] We find no error.

*Judgment affirmed. Barnes, J., and Pope, Senior Appellate Judge, concur.*

DECIDED SEPTEMBER 26, 2002.

*Virginia W. Tinkler*, for appellant.
*J. Tom Morgan, District Attorney, Robert M. Coker, Pilar Gigante, Assistant District Attorneys*, for appellee.

---

[9] See *Gosnell v. State*, 247 Ga. App. 508, 511 (3) (544 SE2d 477) (2001).
[10] See *McCant v. State*, 234 Ga. App. 433, 436 (3) (506 SE2d 917) (1998).