A05A2285. FOSTER & COMPANY GENERAL CONTRACTORS, INC. et al. v. HOUSE HVAC/MECHANICAL, INC.

(627 SE2d 188)

ELLINGTON, Judge.

Foster & Company General Contractors, Inc. ("Foster") and Travelers Casualty & Surety Company of America ("Travelers") appeal the trial court's order (i) granting summary judgment to House HVAC/Mechanical, Inc. ("House") and (ii) denying summary judgment to Foster and Travelers, on House's breach of contract action. We reverse for the reasons set forth below.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from an order either granting or denying summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Ledford v. Smith*, 274 Ga. App. 714, 715 (618 SE2d 627) (2005).

*Terms of the Subcontract.* On October 16, 2001, House, as subcontractor, and Foster, as contractor, entered into a subcontract (the "Subcontract") pursuant to which House agreed to provide a heating, venting, and air conditioning system for the Clayton County Board of Education Building Complex (the "Project") for a base contract price of $899,172. Travelers was the surety on Foster's Project payment bond.

Under Paragraph 11.2.6 of the Subcontract, House was required to pay "for all materials, equipment and labor used in, or in connection with, the performance of [the] Subcontract through the period covered by previous payments received from [Foster]. . . ." Foster agreed to make progress payments and the final payment to House within seven working days after Foster received payment from the Clayton County Public Schools (the "Owner"). Paragraph 6.2 provided, however, that before the final payment, House, if required by Foster, was obligated to "submit evidence satisfactory to [Foster] that

all payrolls, bills for materials and equipment, and all known indebtedness connected with [House's] Work [had] been satisfied." Furthermore, pursuant to Paragraph 8.2.5 (b), Foster had

> the absolute right to set off against any sums, monies, or amounts due or owing to [House] all claims, debts, costs, expenses, damages, liabilities or other obligations which [Foster] has incurred or might incur as a result of any acts, omissions, breaches, or negligence by [House] arising out of or related to any and all agreements, contracts, subcontracts, . . . by and between [Foster] and [House], . . . the Project, . . . or any other matters or dealings of any kind between [Foster] and [House].

Paragraph 12.6.1 further provided that if House defaults

> and fails within three working days after receipt of written notice from [Foster] to commence and continue correction of such default or neglect with diligence and promptness, [Foster] may, after three days following receipt by [House] of an additional written notice, and without prejudice to any other remedy [Foster] may have, make good such deficiencies and may deduct the cost thereof from the payments then or thereafter due [House]. . . .

*MPI and Trane.* This dispute concerns Foster's right under the Subcontract to withhold or setoff monies Foster owed to House under the Subcontract on account of work performed or materials supplied to the Project by Georgia Trane Automation & Control ("Trane") and Mechanical Products, Inc. ("MPI"). Trane's involvement was straightforward. House acknowledges that, at the time it requested final payment from Foster, House owed Trane $27,214.58 for materials used by House on the construction of the Project, and there is no evidence that House ever paid Trane. MPI's association with the Project and the parties is more complex.

House subcontracted a portion of its Project-related work to Amechco, Inc., and MPI supplied materials to Amechco in connection with the work. In August 2002, MPI billed Amechco for materials supplied by MPI and used by Amechco on the Project. In September 2002, MPI notified Foster that MPI had provided $13,874.48 in labor and materials to the Project at Amechco's instance. In December 2002, Foster notified House that MPI was threatening a lawsuit against Amechco and Travelers, and Foster asserted the right under the Subcontract to withhold final payment to House until all bills associated with MPI's work on the Project had been paid.

Foster paid House $44,992.85 in January 2003, which was half of the retainage claimed by House. Foster received its final payment from the Owner in early July 2003. On July 14, 2003, House made a claim on Foster's payment bond for the remainder of House's retainage in the amount of $44,992.85. In a letter to House, Foster replied that House's bond claim was "out of line" because Foster had only received final payment from the Owner two weeks earlier, House had unpaid suppliers with invoices dating back to the fall of 2002, and House had failed to complete certain punchlist items.

In August 2003, Foster sent House photocopies of (i) a check to the order of MPI and House for $16,371.89, (ii) a check to the order of Trane and House for $27,215.58, and (iii) a check to the order of House for $1,229.94. Foster informed House that it would release these checks upon its receipt of executed releases and lien waivers from MPI, Trane, and House.

On October 29, 2003, MPI informed House and Foster that it would sign a release of lien upon its receipt of $13,874.48. According to the affidavit of Foster's president, House subsequently authorized Foster to pay MPI $13,874.48 and to deduct this payment from the balance Foster owed to House for House's work on the Project, provided that MPI agreed to release all claims against House, Foster, and Travelers. Foster's president further averred that in November 2003, MPI agreed to the settlement arrangement and Foster sent a $13,874.48 check to MPI.

*The lawsuit.* On December 22, 2003, House filed this action for breach of contract and failure to honor the payment bond against Foster and Travelers. House subsequently moved for summary judgment, relying on evidence that it had completed all work called for by the Subcontract and had not been notified of any disputed work, defects in construction, or damages allegedly caused by House or its agents or representatives. Foster and Travelers filed a cross-motion for summary judgment. The trial court granted House's motion for summary judgment and denied Foster's and Traveler's cross-motion, finding that House had proved its prima facie case but that Foster and Travelers had failed to submit any admissible evidence. However, the affidavit of Foster's president appears in the record as an attachment to Foster's brief in opposition to House's motion for summary judgment, and House does not contend that the affidavit was inadmissible as evidence.

1. Foster contends that it was authorized to withhold final payment to House pending House's satisfaction of House's obligation to Trane and that the trial court therefore erred in granting summary judgment to House and in denying summary judgment to Foster on this issue. We agree.

OCGA § 13-11-3 provides that "[p]erformance by a contractor or subcontractor in accordance with the provisions of his or her contract *and the satisfaction of the conditions of his or her contract precedent to payment* entitles such person to payment from the party with whom he or she contracts." (Emphasis supplied.) Under Paragraph 6.2 of the Subcontract, Foster could withhold final payment from House pending evidence that House had paid "all known indebtedness connected with [House's] Work." House acknowledges that when House requested final payment from Foster that House still owed Trane $27,215.58 for materials used by House on the Project, and House admits that it has not paid Trane to date. It follows that Foster was entitled to withhold final payment to House pending evidence that House had paid Trane unless House could show an exception in the Subcontract or a later agreement to the contrary.

House argues that the exception to Foster's right to withhold payment is shown by a lien waiver form. The Subcontract contained a list of exhibits, including Exhibit A.7, "Unconditional Waiver and Release Upon Final Payment," which House's CEO averred to be part of the "contract documents binding on the parties." It appears that the parties contemplated that House would execute and submit the waiver form as part of the procedure for obtaining final payment from Foster. House's CEO executed the waiver form on November 20, 2002.

Under the waiver form, House stated that it had been paid in full and released all of its claims and liens against Foster related to "payment rights for persons in undersigned's position." In addition, the document provided that the undersigned had either "already paid or will use the monies he receives from this final payment to promptly pay in full all of his laborers, subcontractors, materialmen and suppliers" for all work, materials, equipment, and services provided for the Project. House cites this representation in the form waiver to show that the parties contemplated that House would pay its unpaid suppliers out of the final payment, and that Foster was therefore in breach of contract by withholding funds from House on account of House's obligation to Trane.

Contract construction is a question of law for the court. OCGA § 13-2-1. "[A] court should, if possible, construe a contract so as not to render any of its provisions meaningless." (Citation and punctuation omitted.) *Vaughn, Coltrane & Assoc. v. Van Horn Constr.*, 254 Ga. App. 693, 695 (563 SE2d 548) (2002). House's proposed construction of the Subcontract negates Foster's express right under Paragraph 6.2 to withhold final payment if House failed to submit evidence that it had paid its known debt in connection with its work under the Subcontract. The lien waiver form did not control when Foster was obligated to disburse the final payment. Rather, the lien waiver reinforced House's obligation to pay its suppliers through House's undertaking

to pay any unpaid suppliers from monies received in the final payment. In order for all the terms of the Subcontract to remain meaningful, we conclude that the parties intended that Foster remain entitled under the terms of the Subcontract to withhold final payment pending House's satisfaction of its known obligations in connection with its work under the Subcontract. It follows, therefore, that the trial court erred in granting summary judgment to House and in failing to grant summary judgment to Foster with regard to Foster's right to withhold final payment to House pending satisfaction of House's obligation to Trane.

2. Foster also contends that it was entitled to setoff MPI's claims against the amounts Foster owed House under the Subcontract, and that the trial court therefore erred in granting summary judgment to House and failing to grant summary judgment to Foster on this issue as well. We agree.

MPI asserted a claim against Foster's payment bond for materials MPI had supplied to the Project but for which MPI remained unpaid. These materials were supplied by MPI to Amechco in connection with work on the Project which was within the scope of work to be performed by House under the Subcontract. House was required to pay for "all materials, equipment and labor used in, or in connection with, the performance of [the] Subcontract through the period covered by the previous payments received from [Foster]." Thus, it appears House breached the Subcontract by failing to ensure that MPI was paid.

Under Paragraph 8.2.5 (b) of the Subcontract, Foster retained an "absolute right" to setoff against monies owed to House all claims or other obligations "which [Foster] has incurred or might incur as a result of any acts, omissions, breaches, or negligence by [House]." Furthermore, Paragraph 12.6.1 provided that in the case of a default by House, Foster was authorized to "make good such deficiencies and may deduct the cost thereof from the payments then or thereafter due [House]." Thus, Foster satisfied House's deficiency by paying MPI's claim and applying a setoff against the monies Foster owed to House.

House contends that Foster's setoff impermissibly exposed House to double liability. We disagree. Unlike Trane, MPI was not contracted directly by House but by House's subcontractor, Amechco. House paid Amechco but Amechco failed to pay MPI. House contends that because it paid Amechco for work including the materials provided by MPI that House should not have to forfeit a portion of its final payment on account of Amechco's failure to pay MPI. As between Foster and House, however, the Subcontract placed the risk of loss of Amechco's failure to pay MPI on House, and House's payment to Amechco does not insulate House from its responsibilities under the Subcontract. See, e.g., *Ranger Constr. Co. v. Robertshaw Controls Co.*,

166 Ga. App. 679, 682-683 (4) (305 SE2d 361) (1983) (agreement between contractor and subcontractor determined the parties' rights).

House also contends that Foster failed to give House sufficient notice of MPI's claim. We disagree. Paragraph 12.6.1 of the Subcontract required that Foster give House two written notices before exercising its remedies upon House's default. On December 19, 2002, Foster alerted House to MPI's claim, notified House of Foster's right under the Subcontract to withhold final payment and to impose a setoff against the contract amount, and asserted the right to withhold payment to House until all of House's subcontractors and suppliers had been paid. This information was repeated in a July 18, 2003 letter to House's CEO. Foster notified House in August 2003 that it had received claims against its payment bond by subcontractors and suppliers which it was House's responsibility to ensure were paid. Foster subsequently satisfied MPI's claim in November 2003. The evidence shows, therefore, that Foster complied with the terms of the Subcontract by notifying House before it imposed a setoff by reason of MPI's unpaid claim.

Based on the foregoing, we conclude that the trial court erred in granting summary judgment to House and in failing to grant summary judgment to Foster with regard to Foster's right to impose a setoff on amounts payable to House under the Subcontract by reason of MPI's claim.

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 14, 2006.

*Smith, Currie & Hancock, Philip E. Beck, Christopher B. Holleman,* for appellants.
*Smith, Welch & Brittain, William A. White,* for appellee.