A11A1329. DIXSON v. THE STATE.
A11A1330. JACKSON v. THE STATE.

(721 SE2d 555)

BARNES, Presiding Judge.

These are companion appeals from the convictions of Margaret J. Dixson and her daughter, Nikeesha Sharay Jackson, for various crimes in connection with a series of shoplifting incidents that occurred at the North Georgia Premium Outlet. In Case No. A11A1329, Dixson was convicted of five counts of misdemeanor theft by receiving and one count of felony fleeing and eluding. She contends on appeal that the evidence was insufficient, and that the trial court erred in refusing to give one of her requested charges. In Case No. A11A1330, Jackson was convicted of one count of felony shoplifting and one count of misdemeanor shoplifting. On appeal she contends that the trial court erred in denying her motion for directed verdict because the evidence was insufficient to support her convictions.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that on January 21, 2009, Dixson, Jackson, and a third woman, Darolynn Patterson, went to the North Georgia Premium Outlet in Dawson County. A deputy with the Dawson County Sheriff's office was shopping in The Children's Place store when he observed Jackson and Patterson enter the store. He became suspicious of the women because "as soon as they walked into the store, they immediately took a left and just started picking

up clothes." The deputy testified that he found the behavior suspicious because most people walk around and "meander" when they shop. When he observed Patterson appear to put items of clothing in her large multicolored purse, he called the 911 center, reported the incident, and gave the operator a description of the two women. The deputy did not observe Jackson take any clothing.

The deputy followed Jackson and Patterson out of the store and saw them get into a white Mitsubishi car. He testified that when the car pulled away "both females were actually in the car, but the doors were not fully closed when the vehicle took off." Jackson was in the front passenger seat and Patterson was in the rear seat, but the deputy could not see the driver.

A patrol officer responding to the 911 dispatch observed the white Mitsubishi coming out of the south exit of the outlet mall and pursued the car with its blue lights activated. The officer "observed several items, blue and green clothing being thrown out of the passenger side window." The officer continued the chase, and radioed dispatch to have someone pick up the tossed items. The white vehicle used the center turn lane to pass several vehicles, then maneuvered around several vehicles waiting for a red light to change by traveling "in the gore area near the little triangle that's set up to lay out the lane designations." The white vehicle then "accelerate[d] even harder" and in his attempt to catch up, the officer testified that he "accelerated absolutely as hard as that Crown Victoria would accelerate."

The officer finally caught up with the vehicle, and the driver pulled over. The driver, who was identified as Dixson, exited the car, and the officer arrested her for fleeing and attempting to elude a police officer and the illegal traffic maneuvers. Jackson and Patterson were detained, and later arrested. Merchandise from five stores — Bath and Body Works, Claire's, Osh Kosh, The Children's Place and Carter's — was retrieved from the vehicle. Employees from the stores identified and testified as to the value of the merchandise. The Bath and Body Works merchandise was valued at $43; the Osh Kosh merchandise at $36.37; the Claire's merchandise at $29.50; the Carter's merchandise at $468.34; and The Children's Place merchandise at $270.

Patterson testified for the State that she, Dixson, and Jackson had stolen clothing from Carter's and The Children's Place and put the clothes in Dixson's vehicle. She also testified that the women knew that the police car was behind them, that Dixson did not immediately pull over, and that Jackson had tossed clothing out of the window. Before trial, Patterson pled guilty to two counts of theft by shoplifting and one count of possession of tools for the commission of a crime.

## Case No. A11A1329

Dixson was convicted of five counts of misdemeanor theft by receiving, and one count of felony fleeing and eluding. On appeal she contends that the trial court erred in denying her directed verdict motion on all counts because the evidence was insufficient to show that she received stolen property from the various stores, or that the property was stolen in Dawson County. She also contends that a fatal variance exists between the allegations and the proof because the State's evidence shows that she was a principal thief rather than a receiver of stolen property. Dixson further contends that the trial court erred in denying her motion in arrest of judgment as to the fleeing and eluding count, and that the trial court erred by not giving one of her jury charges.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve.

(Citation, punctuation and footnote omitted.) *Yarbrough v. State*, 241 Ga. App. 777, 780-781 (4) (527 SE2d 628) (2000).

1. Dixson contends that the only evidence the items were stolen was Patterson's uncorroborated testimony, which was insufficient because Patterson was an accomplice. We do not agree.

Under OCGA § 16-8-7, "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen." A person convicted of OCGA § 16-8-7 "shall be punished as for a misdemeanor except: (1) If the property which was the subject of the theft exceeded $500.00 in value." OCGA § 16-8-12 (a) (1).

> OCGA § 24-4-8 requires that accomplice testimony be corroborated in felony cases where the only witness is the accomplice[,] only slight evidence from an extraneous

source as to a defendant's identity and participation is needed to corroborate an accomplice's testimony. And, such evidence may be entirely circumstantial.

*Smith v. State*, 257 Ga. App. 595, 597 (1) (571 SE2d 817) (2002). It is for the finder of fact to determine whether the evidence, though circumstantial, is sufficient to warrant a finding that the accused committed the offense. See *Hurston v. State*, 202 Ga. App. 311, 313 (1) (414 SE2d 303) (1991). Guilt may be inferred from possession of recently stolen property in conjunction with other evidence of knowledge. Id. at 312 (1). "Guilty knowledge may be inferred from circumstances which would excite suspicion in the mind of an ordinary prudent [person]." Id.

Here, in addition to Patterson's testimony, the deputy observed Patterson and Jackson appear to shoplift at The Children's Place, after which they got into Dixson's car. The evidence also shows that Dixson's car was parked in an isolated area far from the store where the women were observed. Further, Dixson did not stop when police were chasing her, but instead continued to drive evasively while Jackson threw items out of the passenger window. Moreover, there were no receipts showing that the items had been purchased.

It is not required that the corroboration of the testimony given by an accomplice shall of itself be sufficient to warrant a verdict of guilty, or that the testimony of the accomplice be corroborated in every particular. The amount of corroborative extraneous evidence necessary to connect the accused with the commission of the offense lies peculiarly within the province of the factfinder.

(Punctuation omitted.) *Emory v. State*, 301 Ga. App. 771, 774 (2) (688 SE2d 682) (2009). The evidence corroborating Patterson's testimony was sufficient under *Jackson v. Virginia*, supra, to authorize the jury's determination that Dixson was guilty beyond a reasonable doubt of the theft by receiving.

2. Dixson also challenges the trial court's denial of her motion in arrest of judgment as to the count of fleeing and attempting to elude police, arguing that it was improperly and incompletely alleged.

OCGA § 40-6-395 (a) provides:

It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the

police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle.

Count 14 of the indictment charged that Dixson

did unlawfully willfully fail to bring her vehicle to a stop after having been given an audible and visual signal to bring her vehicle to a stop by an officer . . . said officer at the time giving such signal, being in uniform prominently displaying his badge of office, and his vehicle being appropriately marked showing it to be an official police vehicle, while fleeing in an attempt to escape arrest for Theft by Receiving and did flee in traffic conditions which placed the general public at risk of receiving serious injuries in violation of OCGA § 40-6-395. . . .

Dixson argues that the indictment failed to allege every material element of the offense by omitting the "pursuing" element and by not specifying the type of signal given. She contends that she could admit all of the allegations of the indictment and be innocent of the crime of fleeing and eluding because there would be no admission that she attempted to flee from a "pursuing" police officer after having been given a signal to stop by "hand, voice, emergency light, or siren."

As we have held,

where an accusation charges the accused with having committed certain acts "in violation of" a specified penal statute[,] the accusation incorporates the terms of the referenced Code section. Because an accused cannot admit an allegation that her acts were "in violation of" a specified Code section and yet not be guilty of the offense set out in that Code section, such an accusation is not fatally defective.

(Citation omitted.) *State v. Shabazz*, 291 Ga. App. 751, 752 (3) (662 SE2d 828) (2008). Thus, the court did not err in denying Dixson's motion in arrest of judgment.

3. Dixson also contends that the evidence was insufficient to sustain her fleeing and alluding conviction, because while the indictment charged her with failing to stop after receiving an audio *and* visual signal, she was only given a visual signal to stop. To the

contrary, the evidence shows that in addition to activating his blue light, the officer "bumped" his siren several times during the pursuit, and eventually activated his siren. Thus, the evidence was sufficient to authorize the factfinder to find beyond a reasonable doubt that Dixson was guilty of fleeing and eluding. See *Weir v. State*, 257 Ga. App. 387 (571 SE2d 191) (2002) (conviction for fleeing and eluding affirmed where, after officer activated blue lights and sounded siren twice, defendant drove within the speed limit a short distance to his apartment and parked).

4. Although Dixson contends that the State failed to prove venue, OCGA § 16-8-11 provides that, when prosecuting charges for theft by receiving, "the crime shall be considered as having been committed in any county in which the accused exercised control over the property which was the subject of the theft." Here, the State clearly demonstrated that venue was proper in Dawson County, where Dixson began driving away in a vehicle containing the stolen goods.

5. We find no merit to Dixson's contention that her theft by receiving convictions cannot stand because of a fatal variance between the allegations and the proof, in that the evidence showed that she was a principal thief rather than the receiver of stolen items.

"The offense of theft by receiving is intended to catch the person who buys or receives stolen goods, as distinct from the principal thief. An essential element of the crime of theft by receiving is that the goods had been stolen by some person other than the accused." (Citation and punctuation omitted.) *Thomas v. State*, 261 Ga. 854, 855 (1) (413 SE2d 196) (1992). Thus, if "direct and uncontested evidence identifies the defendant as the original thief, the defendant cannot be convicted of theft by receiving." *Phillips v. State*, 269 Ga. App. 619, 631 (10) (604 SE2d 520) (2004).

However, in this case the direct and uncontested evidence did not identify Dixson as the original thief. While Patterson testified that Dixson was involved in shoplifting the items, Dixson was not with the other two women when the officer saw them concealing clothing in The Children's Place. Thus, evidence Dixson was the original thief is not uncontested. See *Weidendorf v. State*, 215 Ga. App. 129, 130 (1) (449 SE2d 675) (1994) ("It is not a requirement of the present law that the State prove the accused did not steal the goods.").

6. Dixson last contends that the trial court committed reversible error by failing to give her requested charge that "[m]ere possession of stolen goods is insufficient to authorize inference of guilty knowledge, an essential to this crime." The trial court refused the request upon finding that another of Dixson's requests, which it did give, covered the same proposition. The requested charge that was

given provided that

> unexplained possession of recently stolen property, alone, is not sufficient to support a conviction for receiving stolen property, but guilt may be inferred from possession in conjunction with other evidence of knowledge. Guilty knowledge may be inferred from circumstances which would excite suspicion in the mind of an ordinary prudent man.

Because a trial court is not required to instruct the jury in the exact language of a requested charge, especially when the principle of law is covered in another charge, we find no error. *Wallace v. State*, 277 Ga. App. 280, 281 (2) (626 SE2d 229) (2006); see *Velazquez v. State*, 282 Ga. 871, 877 (7) (655 SE2d 806) (2008) ("The refusal to give a requested charge . . . is error only if it contains information that is not substantially covered by the charge actually given.").

### Case No. A11A1330

Jackson was convicted of felony theft by shoplifting from Carter's and misdemeanor theft by shoplifting from The Children's Place. On appeal she contends that the trial court erred in denying her motion for directed verdict as to the two counts. She maintains that the evidence was insufficient to prove that she shoplifted from either place, that the clothes belonged to Carter's or The Children's Place, or that they were stolen in Dawson County. We do not agree.

The crime of theft by shoplifting is defined, in relevant part, as follows:

> A person commits the offense of theft by shoplifting when he alone or in concert with another person, with the intent of appropriating merchandise to his own use without paying for the same or to deprive the owner of possession thereof or of the value thereof, in whole or in part, does any of the following: (1) Conceals or takes possession of the goods or merchandise of any store or retail establishment. . . .

OCGA § 16-8-14 (a) (1). As noted earlier,

> sufficiency of the evidence in a criminal case is set out in *Jackson v. Virginia*, supra. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation omitted.) *Taylor v. State*, 266 Ga. App. 818 (598 SE2d 122) (2004).

Although Jackson contends that the evidence was insufficient to support her conviction for felony shoplifting of the clothing from Carter's because the only evidence was the testimony of an accomplice, "[s]light evidence of a defendant's identity and participation from an extraneous source is all that is required to corroborate the accomplice's testimony and thus support the verdict." (Punctuation and footnote omitted.) *Brown v. State*, 268 Ga. App. 24, 26 (1) (601 SE2d 405) (2004). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U. S. 307 at 318-319 (III) (B).

Jackson was not observed in the Carter's store; however, in addition to Patterson's testimony, and the testimony from the Carter's employee that the retrieved items were valued at more than $400, Jackson's furtive behavior observed by the deputy in The Children's Place, and her tossing of the clothing from the passenger window of the car were all evidence from which a jury could reasonably infer Jackson's guilt. See *Cody v. State*, 195 Ga. App. 318 (1) (393 SE2d 692) (1990) ("[T]he corroborating evidence itself need not be sufficient to warrant conviction, but only tend to connect and identify [the] defendant with (the) crime."); see also *Scott v. State*, 234 Ga. App. 378, 379 (1) (506 SE2d 880) (1998) (testimony as to value from employee familiar with value of stolen items sufficient to authorize felony grade shoplifting conviction).

Regarding Jackson's misdemeanor conviction for shoplifting from The Children's Place, no corroboration of accomplice testimony is necessary to support a misdemeanor conviction. See *Neal v. State*, 152 Ga. App. 270, 272 (1) (262 SE2d 561) (1979). Therefore, based on the evidence adduced at trial, this contention is without merit.

*Judgment affirmed. Adams, J., concurs. Blackwell, J., concurs specially.*

BLACKWELL, Judge, concurring specially.

I concur in the judgment, but I do not agree with all that is said in the opinion of the majority, so I do not join it. Some of my differences with the majority merit no discussion, but one does, and I write separately for that reason. In Division 2, the majority says that the indictment sufficiently charged a violation of OCGA § 40-6-395 — even though the indictment does not mention things that are, Dixson says, essential elements of a violation — because the indictment alleges explicitly that Dixson acted "in violation of OCGA § 40-6-395." The latter allegation saves the indictment, the majority explains, because an allegation that the accused violated a statute

necessarily alleges every element of a violation of the statute. Although several prior decisions of this Court — including *State v. Shabazz*, 291 Ga. App. 751, 752 (3) (662 SE2d 828) (2008), on which the majority relies — have endorsed this principle,[1] I have doubts about the soundness of the principle.

In *Henderson v. Hames*, 287 Ga. 534, 537-540 (3) (697 SE2d 798) (2010), our Supreme Court considered whether an indictment sufficiently charged a violation of OCGA § 16-11-108. The *Hames* indictment alleged that the accused acted "in violation of O.C.G.A. § 16-11-108," but it did not explicitly allege that the accused consciously disregarded a substantial and unjustifiable risk that his act or omission would cause harm to, or endanger the safety of, another person, which is an essential element of such a violation. 287 Ga. at 538-539 (3). Noting that "[a]n indictment is void to the extent that it fails to allege all the essential elements of the crime or crimes charged," id. at 538 (3), the Supreme Court concluded that the indictment omitted an essential element of a violation of OCGA § 16-11-108 (a) and that, for this reason, "the indictment was defective." Id. at 539 (3). In light of *Hames*, the principle on which the majority relies today seems doubtful.

In this case, however, it is unnecessary to rely on this principle. Dixson says that her indictment was defective because it does not allege that any officer signaled her to stop by "hand, voice, emergency light, or siren," and because it does not allege explicitly that she attempted to flee or elude a pursuing police officer, but neither allegation, I think, was required here. A violation of OCGA § 40-6-395 (a) ordinarily is only a misdemeanor, but when a violation involves certain aggravating circumstances, which are set out in OCGA § 40-6-395 (b) (5) (A), it amounts to a felony. Dixson was charged with, and convicted of, a felony violation based on the aggravating circumstance described in OCGA § 40-6-395 (b) (5) (A) (iii). To ascertain the elements of the offense, then, we must look to both OCGA § 40-6-395 (a) and (b) (5) (A) (iii).

In pertinent part, OCGA § 40-6-395 (a) provides that it is unlawful for a driver "willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible

---

[1] See also *State v. King,* 296 Ga. App. 353, 353-354 (674 SE2d 396) (2009); *Phillips v. State,* 278 Ga. App. 198, 202-203 (2) (a) (628 SE2d 631) (2006); *Bishop v. State,* 266 Ga. App. 129, 132 (2) (596 SE2d 674) (2004); *Bowman v. State,* 277 Ga. App. 598, 601 (1) (490 SE2d 163) (1997); *Jones v. State,* 206 Ga. App. 604, 605 (2) (426 SE2d 179) (1992); *Reed v. State,* 205 Ga. App. 209, 210 (1) (422 SE2d 15) (1992); *Hammock v. State,* 201 Ga. App. 614, 615-616 (1) (b) (411 SE2d 743) (1991); *State v. Howell,* 194 Ga. App. 594, 594-595 (391 SE2d 415) (1990); *Burden v. State,* 187 Ga. App. 778, 779 (2) (371 SE2d 410) (1988).

signal to bring the vehicle to a stop," and it allows that the visual or audible signal "may be by hand, voice, emergency light, or siren." A violation of OCGA § 40-6-395 (a) amounts to a felony under OCGA § 40-6-395 (b) (5) (A) (iii) if the driver, in the course of the violation, and "while fleeing or attempting to elude a pursuing police vehicle or police officer in an attempt to escape arrest for any offense[, f]lees in traffic conditions which place the general public at risk of receiving serious injuries." The indictment in this case alleges that Dixson:

> did unlawfully [and] willfully fail to bring her vehicle to a stop after having been given an audible and a visual signal to bring her vehicle to a stop by an officer . . . while fleeing in an attempt to escape arrest for [a violation of OCGA § 16-8-7] and did flee in conditions which placed the general public at risk of receiving serious injuries . . . .

I am unpersuaded that it was necessary to allege in the indictment the precise means by which the audible and visual signal was given or to allege more explicitly that it was an officer from whom Dixson was fleeing. Although the statute specifies that the visual or audible signal can be given "by hand, voice, emergency light, or siren," OCGA § 40-6-395 (a), nothing says that it must be, and an allegation of a visual or audible signal by unspecified means is, I think, sufficient. The indictment in this case alleges that Dixson was given "an audible and a visual signal to bring her vehicle to a stop," and the failure to allege the precise means by which the signal was given seems inconsequential to me. And although the indictment does not explicitly allege that it was a police officer from whom Dixson fled, that much is necessarily implied, I think, by the other allegations, including the allegation that Dixson was "fleeing in an attempt to escape arrest" after having been given a signal to stop by an officer. By definition, "fleeing" involves movement away from some condition, person, place or thing,[2] and the context in which "fleeing" is used in this indictment implies quite clearly that it was an officer from whom Dixson fled. Because the indictment includes language that necessarily implies, without reference to a statute or any other external source, this element of the offense, the indictment is sufficient. See *State v. Harris*, 292 Ga. App. 211, 212 (663 SE2d 830) (2008) ("[T]he failure to allege intent is not fatal where the

---

[2] See The Compact Oxford English Dictionary 603 (New ed. 1998) (to "flee" is "[t]o run away from or as from danger; to take flight; to try to escape or seek safety by flight."); Webster's Third New International Dictionary 868 (3d ed. 1976) (to "flee" is "to run away from or as if from danger or evil"); Webster's New Universal Dictionary 700 (1979) (to "flee" is "to run away or try to escape from; to avoid; to keep at a distance from").

accusation or indictment employs language that necessarily raises an inference that the requisite criminal intent existed.'').

DECIDED NOVEMBER 23, 2011 —
RECONSIDERATION DENIED DECEMBER 16, 2011 —

*Robert Kenner, Jr.*, for appellants.
*Lee Darragh, District Attorney, Jennifer D. Hart, Hugh M. Hamilton, Assistant District Attorneys*, for appellee.