**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**April 30, 2020**

# In the Court of Appeals of Georgia

A19A0556. LESLIE v. THE STATE.

GOBEIL, Judge.

In 2013, a jury found Tedric Leslie guilty of kidnapping and armed robbery, and the trial court imposed a total sentence of life imprisonment. Leslie appeals from the trial court's grant of his motion for an out-of-time appeal, arguing: (1) the evidence was insufficient to sustain his kidnapping conviction; (2) the application of the kidnapping statute, OCGA § 16-5-40 (b) (2) (B), violated his constitutional rights because the statute is void for vagueness;[1] (3) the trial court erred in admitting Leslie's mother's prior statement to police; (4) the trial court committed plain error

---

[1] We previously transferred Leslie's appeal to the Supreme Court of Georgia to address Leslie's constitutional challenge in the first instance. The Supreme Court transferred the appeal back to us, finding that its jurisdiction had not been invoked because Leslie had failed to timely raise his challenge to OCGA § 16-5-40 (b) (2) (B) in the trial court. See Case No. S19A1505 (transferred Aug. 19, 2019).

in a jury charge by impermissibly shifting the burden of proof to the defense; (5) the trial court erred in failing to excuse a juror for cause; (6) the trial court erred in admitting evidence of other robberies; (7) his trial counsel rendered ineffective assistance by failing to object to inadmissible and prejudicial hearsay with respect to a confidential informant; and (8) his post-conviction counsel rendered ineffective assistance by failing to present any evidence at the motion for new trial hearing. Leslie also argues that: (9) remand to the trial court is necessary for a hearing regarding trial counsel's ineffectiveness, as well as his post-conviction counsel's failure to raise additional claims in his motion for new trial with respect to trial counsel's ineffectiveness. For the reasons that follow, we now affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

*Williams v. State*, 333 Ga. App. 879, 879 (777 SE2d 711) (2015) (citation and punctuation omitted). So viewed, the record shows that on June 27, 2012, S. A. was the sole clerk on duty at Ralph's Econoflash ("Ralph's"), a convenience store located in Douglas County. At approximately 9:35 p.m., a female customer, later identified

as Itoria Howard, entered the store, purchased a drink, and then left. The clerk recognized Howard as a frequent customer. After Howard left, the clerk heard the doorbell ring, and two males, later identified as Dayvon Grant ("Dayvon") and Leslie, entered the store and ran to the counter. They approached S. A., who was sweeping behind the counter. One of the men, who was holding a gun, jumped over the counter, grabbed S. A. by the neck, and threw him to the ground back over in front of the counter. During the scuffle, the gun, which the victim described as small and silver-colored, discharged.

While holding S. A. by the neck, one of the assailants then forced S. A. at gunpoint back to the cash register behind the counter and told him to "open the f----ing register." The victim believed that the assailant was "going to shoot [him] with the gun." S. A. opened the register and then was forced to the ground again and held at gunpoint, while the other assailant grabbed the money from the cash register, which totaled approximately $3,600, and put it in a bag. The two men took the money, some cigars, and some receipts and other documents that were kept under the cash drawer, and then left the store on foot.

After the assailants left, the victim locked the door and called the police. At trial, the victim described that one of the assailants was tall with a slim build, and the

other man as "kind of short." Both men wore dark clothing, had covered their faces with torn pieces of clothing, and wore gloves. Police later located the bullet fired from the gun during the course of the robbery inside the Ralph's, but not the gun itself.

Less than two months after the Ralph's robbery, on August 8, 2012, an armed robbery occurred at a GameStop retail store. Surveillance video acquired from the businesses adjacent to the GameStop showed Dayvon, Sabor Grant ("Sabor"), and Luvonne Tarver[2] in the vicinity of the GameStop mere minutes before the robbery. Employees from one of the adjacent businesses identified Dayvon, and informed police that he was often seen with his girlfriend, Howard, the same woman who had purchased a drink in Ralph's just before the armed robbery at that establishment.

Two days later, on August 10, 2012, just before 10 p.m., law enforcement responded to reports of an armed robbery at the Dollar General store involving three males. A responding officer noticed a BMW driving away from the scene of the Dollar General with a male at the wheel and at least two other passengers in the vehicle. The officer attempted to intercept the vehicle, but the BMW failed to stop. The car eventually crashed into another vehicle before coming to a stop. While the

---

[2] Sabor and Dayvon are brothers, and Tarver is their mother.

vehicle was still in motion, the occupants jumped out of the car and started running. Officers apprehended two of the occupants – a female, identified as Tarver, and the driver, a male later identified as Sabor. . The Douglas County Sheriff's Office processed the BMW pursuant to a search warrant and recovered several items: pieces of clothing, including fabric cut from t-shirts; a driver's license belonging to Sabor; a social security card and birth certificate belonging to Dayvon; a purse and wallet; and a .22 caliber revolver. The revolver contained four live rounds and one spent cartridge. Officers later established that the bullet recovered at the scene of the Ralph's robbery was fired from the revolver found inside the BMW. Analysis of the firearm failed to yield any fingerprints. Police also recovered two blue synthetic rubber gloves in the front driver side floorboard of the BMW. The clothing items and documentation recovered from the BMW led to the "photo development" of Dayvon, Sabor, and Tarver as suspects in the armed robberies. Leslie was not a suspect at that time.

Based on information gathered from the GameStop and Dollar Tree robberies, officers issued an arrest warrant for Dayvon. A search of Howard's home, where Dayvon had been staying, revealed the bag used in the Ralph's robbery, receipts and other documents taken from the Ralph's cash register, and clothing worn by the

assailants as depicted on the Ralph's surveillance video. Both Dayvon and Howard were arrested. Following their arrests, the police received an anonymous tip via e-mail that the second male seen on surveillance footage of the Ralph's robbery was Leslie. Officers then compared a photograph of Leslie to the suspect seen on video at Ralph's and determined it was the same person.

Based on the foregoing, a grand jury returned an indictment charging Leslie with armed robbery of the Ralph's store, and kidnapping of S. A., the Ralph's store clerk. Officers then executed a search warrant for the residence of Patricia Batiste (Leslie's mother), which was Leslie's last known address. Leslie later turned himself in to police.

At trial, the store clerk victim testified about the robbery at Ralph's, and surveillance video recovered from the store was played for the jury. Howard,[3] who was 17 years old and a senior in high school at the time of the Ralph's robbery, testified that she had been dating Dayvon for about two years in June 2012. Howard met Leslie through Dayvon. Howard described Dayvon as 6'1" and slim, while Leslie was shorter with a medium build. On the afternoon of June 27, 2012, Howard,

---

[3] Howard was charged with armed robbery, kidnapping, and making a false statement to police. She later pleaded guilty to the armed robbery and false statement charges.

Dayvon, and Dayvon's cousin, Shakur, were at Leslie's house. The group discussed robbing Ralph's, where Howard was a frequent customer. They planned to cover their faces with cloth torn from an old t-shirt and cover their hands with gloves. The plan was for Howard to enter the store to check on how many people were inside, and then call Shakur, the designated getaway driver, to let him know that the coast was clear for Dayvon and Leslie to proceed. Dayvon's role in the plan was "kind of the tough-guy role, the-one-in-charge person[,]" and Leslie was "mainly supposed to get the money." Howard confirmed that the gun recovered from the BMW was Dayvon's gun, which he had with him on June 27, 2012. Leslie purchased the bullets for the gun at Walmart on June 27, the same day as the robbery at Ralph's, because Dayvon was not old enough to purchase ammunition. The BMW originally belonged to Sabor and he then gave it to Dayvon.

On the night of June 27, Howard drove her car to the Ralph's parking lot and entered the store and purchased a drink. Howard then called Shakur and told him that she was headed back home. Howard recalled that Dayvon, Shakur, and Leslie split the money taken from Ralph's.

Leslie's mother, Batiste, testified that after she learned that an indictment had been issued for her son charging him with armed robbery, she contacted Leslie, who

was in Texas at the time, and she then drove out and brought him back to Georgia. Leslie ultimately turned himself in to police.

At the close of the State's evidence, Leslie moved for a directed verdict, which the trial court denied. The jury ultimately convicted Leslie of kidnapping and armed robbery. The trial court sentenced Leslie to a term of life imprisonment for his armed robbery conviction, and a twenty-year term for the kidnapping conviction, to serve ten, to run concurrently. Leslie then filed a motion for new trial. Following the appointment of post-conviction counsel, Leslie filed an amended motion for new trial, in which he raised several claims of ineffectiveness of trial counsel. Following a hearing, the trial court denied Leslie's motion. Leslie then filed a pro se notice of appeal, and newly appointed appellate counsel later filed an amended notice of appeal. We dismissed the appeal, finding that Leslie's pro se notice of appeal was a nullity and Leslie's subsequent, counseled notice of appeal was untimely and did not relate back in time to Leslie's pro se filing. See Case No. A18A2139 (dismissed Aug. 1, 2018). Leslie subsequently filed a motion for an out-of-time appeal, which the trial court granted. The instant appeal followed.

1. Leslie argues that the evidence was insufficient to support his kidnapping conviction. Specifically, he asserts that the movement of the store clerk from one side

8

of the counter and back was merely incidental to the underlying offense of armed robbery, and the State failed to prove the "asportation"[4] or "movement" element as required by OCGA § 16-5-40 (b).

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a). Pursuant to subsection (b) of that statute, "slight movement" shall be sufficient; provided, however:

(1) . . . any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense.

(2) Movement shall not be considered merely incidental to another offense if it:

(A) Conceals or isolates the victim;

(B) Makes the commission of the other offense substantially easier;

(C) Lessens the risk of detection; or

---

[4] "The element of 'abducting or stealing away' . . . [is] known as asportation[.]" *Whatley v. State*, 335 Ga. App. 749, 753 (2) (782 SE2d 831) (2016) (citation omitted).

9

(D) Is for the purpose of avoiding apprehension.

OCGA § 16-5-40 (b). According to Leslie, any movement of the victim that could have been attributed to him was slight, occurred while in the commission of the armed robbery, and was merely incidental thereto. This contention lacks merit.

To determine whether the asportation requirement has been met, the following four factors are to be considered:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*State v. Clements*, 289 Ga. 640, 647 (2) (c) (715 SE2d 59) (2011) (citing *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008) (superseded by statute)).

> In analyzing these factors, it is not necessary that every one be satisfied in the State's favor in order to find asportation. Rather, the heart of *Garza*'s analysis is whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely attendant to some other crime. This means that, for instance, even a minimal movement that enhances the control of the

10

perpetrator over the victim will constitute asportation when it is not an inherent part of a separate offense.

*Arnold v. State*, 324 Ga. App. 58, 62-63 (2) (749 SE2d 245) (2013) (citations and punctuation omitted).

Here, the evidence of the movement of the store clerk, S. A., was sufficient to sustain the asportation element of the kidnapping conviction. In the present case, the evidence showed that S. A. was moved from one side of the store counter and back at gunpoint and then forced to open the cash register.[5] The victim was then forced to the ground at gunpoint and held there while Leslie emptied the contents of the cash register. This movement of S. A. served to make the commission of the armed robbery substantially easier, because it provided Leslie and Dayvon access to the cash register and its contents. Further, this movement, along with the victim being forced and held to the ground at gunpoint isolated and concealed him, reducing the likelihood of

---

[5] Although the State never asserted that Leslie was the gunman in the Ralph's robbery, he was charged as a co-conspirator and party to the crime of kidnapping. Under Georgia law, a person may be convicted of a crime even if he does not directly commit the crime but, instead, "[i]ntentionally aids or abets in the commission of the crime; or . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b) (3) and (4). And, whether a person was a party to the crime and aided and abetted in the commission of the offense or intentionally advised, encouraged, or counseled another, are questions for the jury. *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006).

11

detection during the robbery and permitting the completion of the crime. Compare *Taylor v. State*, 344 Ga. App. 122, 131-132 (1) (g) (809 SE2d 76) (2017) (asportation established by the movement of the victim at gunpoint from the front doorway to interior portions of the apartment, which concealed and isolated the victim and reduced the likelihood of detection during the commission of an armed robbery), with *Floyd v. State*, 342 Ga. App. 438, 441 (1) (b) (803 SE2d 597) (2017) (asportation did not occur when the victim, while held at gunpoint, was not forced to move from his room while he retrieved items and placed them in a bag). Moreover, being moved about and forced to the ground at gunpoint presented a significant danger to S. A., independent of the danger posed by the robbery, because it enhanced the assailants' control over him, increased the likelihood of bodily injury, and made any potential intervention more difficult. See *Clements*, 289 Ga. at 647 (2) (c).

As shown above, the movement of the victim was not merely incidental to the armed robbery, but served to make the commission of the crime substantially easier by concealing and isolating the victim and giving the assailants greater control. The evidence, therefore, was sufficient to allow reasonable jurors to conclude that the movement of the victim was not merely incidental to the robbery. See *Alexander v. State*, 348 Ga. App. 859, 865 (1) (b) (825 SE2d 405) (2019) (movement of victim into

12

bathroom of apartment was not incidental to the crime of robbery, as the purpose of that movement was to isolate or conceal the victim and make commission of the robbery easier).

2. Leslie also argues that the post-*Garza* amendment to the kidnapping statute found at OCGA § 16-5-40 (b) (2) (B) is unconstitutionally void for vagueness and violates his due process rights because it fails to clearly specify the type of movement that satisfies the asportation element of the statute.

As noted by the Supreme Court in its transfer order, however, Leslie did not raise his constitutional challenge to OCGA § 16-5-40 (b) (2) (B) until his amended motion for new trial. See Case No. S19A1505 (Aug. 19, 2019). As such, the claim was not preserved for ordinary appellate review. See *State v. Herrera-Bustamante*, 304 Ga. 259, 262-263 (2) (a) (818 SE2d 552) (2018). The Supreme Court repeatedly has held that challenges to the constitutionality of a statute must be made at the first available opportunity and cannot be withheld until a motion for new trial. See, e.g., *Lewis v. State*, 279 Ga. 69, 70 (2) (608 SE2d 602) (2005); *Hardeman v. State*, 272 Ga. 361, 361 (529 SE2d 368) (2000). See also *Kolokouris v. State*, 271 Ga. 597, 598 (1) (523 SE2d 311) (1999) ("A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later.") (citation and

13

punctuation omitted). Because Leslie did nothing before or during his trial to preserve his claim regarding the constitutionality of OCGA § 16-5-40 (b) (2) (B), he is barred from raising this issue on appeal. See *Lacey v. State*, 270 Ga. 37, 37 (1) (507 SE2d 441) (1998) ("Constitutional attacks must be made at the first opportunity, and it is too late to raise such question after a guilty verdict has been returned by the jury.") (citation and punctuation omitted). Accordingly, Leslie's challenge to the constitutionality of OCGA § 16-5-40 (b) (2) (B) was untimely and does not serve as a basis to reverse his convictions.

3. Leslie asserts that the trial court erred in admitting his mother's prior statement to police concerning Leslie's involvement in the Ralph's robbery. We disagree.

At trial, the State called Batiste, Leslie's mother, as a witness. Batiste admitted that while police executed a search warrant of her house, she volunteered certain incriminating evidence about her son to the police, including that: (1) although Leslie had participated in the robbery with Dayvon, he did not kidnap anyone and simply stood by the counter in Ralph's; (2) Leslie was "high" at the time of the robbery; and (3) Leslie had told her that he did not hit anybody and he did not have a gun on his person during the robbery. At trial, Batiste denied that these statements were true;

14

rather she alleged she had been coerced into making them by police in the hopes of convincing the State not to charge her son, or to charge him with a lesser crime.

A detective with the Douglasville Police Department later testified that during the search of her home, Batiste was interviewed and she initially told the detective that "she could not comprehend why [Leslie] had gotten involved in such a thing, and then she uttered that he was high at the time . . . of the incident." The detective then retrieved his digital voice recorder from his patrol car and started recording his conversation with Batiste. Leslie objected to the contents of the detective's conversation with Batiste as hearsay, which the trial court overruled. The detective continued that Batiste again stated that Leslie was high on drugs at the time of the robbery, he did not know that Dayvon had a gun during the commission of the robbery, and his role in the robbery was limited to standing by the register. Leslie renewed his hearsay objection to the admission of the detective's recording of his conversation with Batiste, which the trial court again overruled. Specifically the court explained:

> The [c]ourt is going to overrule the objection, and the [c]ourt is going to admit the evidence, candidly, not for the reason cited by either side, but based upon OCGA § 24-8-801 [d] 1 [C], and the objection was the evidence was hearsay, and under that code section, the prior statement

15

of a witness is admissible if the declarant testifies at the trial or hearing, and is subject to cross-examination. All right, the evidence is admitted.

The State then played the detective's recording with Batiste.

"We review [evidentiary] ruling[s] for an abuse of discretion." *Silvey v. State*, 335 Ga. App. 383, 390 (2) (a) (780 SE2d 708) (2015) (citation omitted). The crux of Leslie's argument is that OCGA § 24-8-801 (d) (1) (C) is inapplicable to the instant case because Batiste's statement to police was not "one of identification of a person made after perceiving the person."[6] However, it is clear from the trial court's ruling that, although it cited the incorrect subsection, the court admitted the evidence pursuant to OCGA § 24-8-801 (d) (1) (A). Under that section, a prior out-of-court statement by a witness

> shall not be hearsay if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as a prior inconsistent statement or a prior consistent statement under [OCGA §] 24-6-613[.]

---

[6] OCGA § 24-8-801 (d) (1) (C) provides: "A statement shall not be hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving the person[.]"

16

Here, the State sought to introduce Batiste's recorded statement — in which she volunteered certain incriminating information about Leslie's role in the Ralph's robbery — in direct response to Batiste's testimony at trial, in which she alleged the statements were not true and she had been coerced into making them by police. The recorded statement, therefore, was admissible as a prior inconsistent statement. See *McNair v. State*, 330 Ga. App. 478, 482 (1) (a) (767 SE2d 290) (2014) ( "A prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes.") (citation and punctuation omitted). Moreover, the prosecutor was permitted to impeach her own witness. See OCGA § 24-6-607 ("The credibility of a witness may be attacked by any party, including the party calling the witness."). As a result, the trial court did not abuse its discretion in admitting the recording of Batiste's prior statement to police.

4. Next, there is no merit to Leslie's contention that it was plain error[7] for the trial court to give the pattern jury instruction on the State's burden of proof as it relates to reasonable doubt.[8]

Generally, it is not error for a trial court to instruct the jury using the pattern charge, where such charge is a correct statement of the law. *Huckabee v. State*, 287 Ga. 728, 733 (4) (c) (699 SE2d 531) (2010). In this case, the pattern charge's mention of jurors' "seeking the truth" does not, as Leslie urges, dilute or cause confusion over the State's burden of proof and the role of the jury. In criminal cases, the factfinder does have the task of seeking the truth. See *Sherrod v. State*, 280 Ga. 275, 276 (627 SE2d 36) (2006). But the jury is to determine the truth in view of the evidence, considered in light of the court's instructions. *Mayfield v. State*, 276 Ga. 324, 331 (2) (b) (578 SE2d 438) (2003). Here, the court's instruction properly focused the jurors

---

[7] Because Leslie did not object to this issue below — a finding he does not contest on appeal — the contested jury charge is subject to review on appeal for "plain error which affects [his] substantial rights." OCGA § 17-8-58 (b).

[8] The portion of the contested pattern charge read as follows: "A reasonable doubt means just what it says: It is that doubt of a fair-minded and impartial juror, who is honestly seeking the truth." See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2007), § 1.20.10 (defining reasonable doubt). The trial court further instructed that the evidence must "exclude[] all reasonable theories of innocence, and prove the guilt of the accused beyond a reasonable doubt."

on their consideration of the truth as proven by the evidence presented at trial. As a result, Leslie's contention is without merit.

5. Leslie argues that the trial court erred in failing to excuse a juror for cause.

"Whether to strike a juror for cause lies within the sound discretion of the trial judge, and the trial court's exercise of that discretion will not be set aside absent a manifest abuse of discretion[.]" *Brown v. State*, 295 Ga. 804, 808 (4) (764 SE2d 376) (2014) (citation omitted). The control of the pursuit of the impartiality of the jurors and their ability to evaluate the case on the merits and remain free from bias and prior inclination is within the discretion of the trial court, and will only be upset on review in the event of manifest abuse of discretion. See *Robles v. State*, 277 Ga. 415, 418-419 (3) (589 SE2d 566) (2003).

During voir dire, juror number 20 expressed concern about his ability to comprehend the proceedings, as English was his second language. The trial court:

> denied [Leslie's] challenge as to [juror 20]. The state opposed the challenge. The [c]ourt paid attention to [juror 20], and found that his responses were appropriate, that, from what [the court] could tell, he understood everything that occurred. [The court] did just give him a special instruction that if, at any point in time, he doesn't understand what's going on, he needs to bring that to our attention, and [the court will] probably reiterate that. [The court is] not comfortable with

19

discriminating against [juror 20], who's a man of Asian descent, simply because he says that he struggles a little bit with English as a second language. [The court is] satisfied, from what [the court has] heard, that he does understand English sufficient to be able to conduct the trial as a juror, fairly and impartially.

Although juror number 20 voiced a concern about his English skills, there is no indication that he was unable to follow the proceedings. Moreover, the trial court specifically instructed juror number 20 to inform the court if he experienced any difficulty in understanding the proceedings. The record does not contain any evidence that juror number 20 raised any such concerns subsequent to the trial court's directive. Based on these circumstances, we find no abuse of discretion in the trial court's denial of Leslie's request to strike this juror for cause.[9] See *Dockery v. State*, 287 Ga. 275, 276 (2) (695 SE2d 599) (2010) (no abuse of discretion where trial court declined to strike juror who demonstrated his ability to speak and understand English by his responses in voir dire).

---

[9] In his brief, Leslie asserts that the trial court's failure to strike juror number 20 for cause "was compounded by allowing a juror who knew several state actors and a potential witness." Leslie, however, failed to support this claim with any argument or citation to the record, and thus, has abandoned this issue on appeal. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

6. Leslie alleges that the trial court erred in admitting evidence of other robberies as these were unrelated to the instant proceeding and unduly prejudicial.

At trial, as one of the investigating officers attempted to discuss the Dollar General and GameStop robberies, Leslie objected to testimony about these other crimes, arguing that they were both irrelevant and prejudicial. The State countered that the prior crimes were relevant to show how the investigation ultimately led police to uncover Leslie's involvement in the Ralph's robbery. Specifically, evidence recovered from the BMW that had been abandoned by the suspects in the Dollar General robbery led to the identification of Dayvon, which in turn led police to items tied to Leslie. The trial court overruled the objection, but limited the presentation of this evidence, to which Leslie's counsel acquiesced, to ensure that Leslie was not directly implicated in the GameStop or Dollar Tree incidents. In fact, three of the investigating officers specifically stated that Leslie was not a suspect in either of the other robberies.

"Evidentiary rulings are reviewed under an abuse of discretion standard." *Baughns v. State*, 335 Ga. App. 600, 601 (1) (782 SE2d 494) (2016) (citation and punctuation omitted). Evidence intrinsic to the charged offense is admissible and not subject to the limitations and prohibition on "other acts" evidence found in OCGA

21

§ 24-4-404 (b). See *Smith v. State*, 302 Ga. 717, 725 (4) (808 SE2d 661) (2017);

*Williams v. State*, 342 Ga. App. 564, 566 (1) (804 SE2d 668) (2017).

> Evidence is intrinsic "if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."

*Brooks v. State*, 298 Ga. 722, 726 (2) n. 11 (783 SE2d 895) (2016) (quoting *United States v. Utter*, 97 F3d 509, 513 (II) (B) (11th Cir. 1996)); see also *Williams*, 342 Ga. App. at 566 (1). Our Supreme Court has elaborated:

> Evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*Smith*, 302 Ga. at 725 (4) (citation and punctuation omitted); see also *State v. Battle*, 344 Ga. App. 565, 568 (1) (812 SE2d 1) (2018).

In *Williams*, this Court held that evidence of a Newton County carjacking — the second in a three-day, three-carjacking spree — was admissible intrinsic evidence during the trial of the first and third carjackings, both of which occurred in Clayton County. 342 Ga. App. at 567 (1). We noted that the Newton County carjacking

22

"established the complete time line of the consecutive carjackings, and items from the first two carjackings were found in the vehicle stolen in the third hijacking." Id. Also, evidence from the third incident tied the defendant to the first and second incidents. Id. Thus, we concluded, "the Newton County carjacking was inextricably intertwined with the first and third carjackings." Id. And in *Baughns*, this Court held that evidence of all eleven crimes "committed in a similar way, within a two-week period . . . in the same area . . . [that] included overlapping participants" was admissible against one of three defendants who was being tried separately, even though that defendant directly participated in only six of the eleven crimes. 335 Ga. App. at 603 (1).

Here, surveillance footage recovered from businesses adjacent to the GameStop showed Dayvon, Sabor, and Tarver in the area mere minutes before the armed robbery at that establishment. Officers also learned after the GameStop robbery that Howard was Dayvon's girlfriend. Next, items from the Ralph's robbery were found in the abandoned BMW that had been seen leaving the scene of the Dollar General robbery, including the gun that had been discharged during the course of the Ralph's robbery. A search of Howard's home, where Dayvon had been staying, revealed the bag used in the Ralph's robbery, receipts and other documents taken from the cash

23

register, and clothing worn by the assailants as depicted on surveillance video. At trial, Howard testified as to Leslie's involvement in the Ralph's robbery, including that he purchased the bullets for the gun used in the crime. Moreover, the trial court specifically limited introduction of this evidence to avoid any implication that Leslie participated in the other robberies, and thus its probative value was not substantially outweighed by the danger of unfair prejudice under these circumstances. See *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017) ("Intrinsic evidence must also satisfy [OCGA § 24-4-]403.").

In this case, the uncharged offenses were part of a crime spree committed by a burglary crew of which Leslie was a part, even if he did not directly participate in the GameStop and Dollar General robberies. All of the offenses involved overlapping participants, and were linked in time and circumstance with the Ralph's robbery. Moreover, the evidence from the other two crimes was inextricably intertwined with the evidence from the Ralph's robbery, proving Leslie's involvement with this incident. Accordingly, based on these circumstances, the trial court did not abuse its discretion in admitting evidence of the uncharged offenses. See *Williams*, 342 Ga. App. at 567 (1); *Baughns*, 335 Ga. App. at 603 (1).

24

7. Leslie asserts that he received ineffective assistance of trial counsel. To prevail on this claim, Leslie "must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance." *Brewer v. State*, 301 Ga. 819, 821 (3) (804 SE2d 410) (2017) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). If an appellant fails to satisfy either prong of this test, we need not examine the other prong. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

> (W)hile other counsel, had they represented [Leslie], may have exercised different judgment, the fact that trial counsel chose to try the case in the manner in which it was tried, and made certain difficult decisions regarding the defense tactics to be employed with which [Leslie] . . . [later disagreed], does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel.

*Reed v. State*, 285 Ga. 64, 66-67 (6) (673 SE2d 246) (2009) (citations and punctuation omitted). Rather, to show deficient performance, "[Leslie] must demonstrate that counsel's performance was not reasonable under the circumstances confronting counsel at the time, without resorting to hindsight." *Belton v. State*, 270 Ga. 671, 673 (3) (512 SE2d 614) (1999) (citations and punctuation omitted). In

25

reviewing counsel's performance on appeal, "we must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Hardin v. State*, 344 Ga. App. 378, 381 (1) (810 SE2d 602) (2018) (citation and punctuation omitted).

Here, Leslie asserts that his trial counsel rendered ineffective assistance by failing to object to hearsay testimony from the lead investigating officer when he repeated the anonymous tipster's out-of-court statements during his testimony.

At trial, the lead investigator testified that Leslie was identified by an anonymous tip relayed through an e-mail. Specifically, he stated:

> I received an email from someone who created a pseudo-named (sic) account, that said, "the guy in the video you're looking for is Tedric." Ted – actually it was Tedric. And he didn't give me a whole name, but says he matches the description, he gives me a physical description of him as about 5'6" or so, one forty, something to that effect, and says, you know, you can check Douglas County High School records, you'll find him there. So I start researching Tedric, from this pseudo-name in the email. I find Tedric Leslie, matches the physical description of the robber, school records indicate that he's local, lives close by, and when I start pulling all that together, and I actually pulled a known photograph of him that I could come in contact with. It was a recent photograph, recent to the robbery, and I compared the two and I thought, there's a great similarity here. . . . [A]nd [the informant] gave me more

information that I verified and panned out at that particular time, that led me to Tedric Leslie. That's the first time Tedric Leslie become a named suspect in this case[.]

In its order denying Leslie's motion for new trial, the trial court explained that it

believe[d] the evidence was inadmissible and that trial counsel should have objected; however, again, there could be a tactical reason why no objection was made in the context of the other overwhelming evidence which incriminated [Leslie]. This finding is supported in the court's view by the fact that the tipster's information did not incriminate [Leslie], but a person sharing his name; it was the officer's investigation that caused him to become a suspect.

As we have previously explained,

(h)earsay testimony explaining an investigating officer's conduct is rarely admissible because the officer's reason for initiating or continuing an investigation is not generally a relevant inquiry at trial. In contrast, the motive and conduct of the witness who first links a suspect directly to the crime often are relevant.

*Carter v. State*, 324 Ga. App. 118, 122 (2) (a) (749 SE2d 404) (2013) (citation and punctuation omitted). Leslie maintains that his trial counsel's performance was deficient because he should have objected to the anonymous tipster's statements to the investigating officer as inadmissible hearsay in violation of the Sixth Amendment

Confrontation Clause. Leslie claims prejudice because the anonymous tipster's e-mail was the only evidence linking him to the Ralph's robbery, and thus, he maintains that it is highly probable that the detective's testimony contributed to the verdict.

In this case, even assuming that trial counsel was deficient for failing to object to the investigating officer's testimony about the contents of the anonymous tip, Leslie has failed to establish how this deficiency prejudiced his defense. The jury would have been authorized to find that Leslie participated in the Ralph's robbery through direct evidence unrelated to the tipster, including Howard's testimony that documented Leslie's role in the robbery, Leslie's mother's initial statements to police implicating him in the crime, as well as clothing recovered from the BMW matching that worn by Leslie at the time of the robbery as shown on surveillance footage. As a result, "[a]ssuming that an objection would have been sustained, in light of the other testimony produced at trial, it is highly probable that the testimony that the investigating officer decided to [look into Leslie] in response to an anonymous tip did not contribute to the jury's verdict." *Carter*, 324 Ga. App. at 123 (2) (a) (citation and punctuation omitted).

8. Leslie contends that his post-conviction counsel was ineffective for failing to call any witnesses or present any evidence at the motion for new trial hearing.

28

Specifically, Leslie argues that counsel's failure to call his trial counsel as a witness warrants remand for a new hearing to address several of his claims pertaining to ineffectiveness of trial counsel that were raised in his motion for new trial.

Following the entry of his judgment of conviction and sentence, Leslie filed a motion for new trial. Leslie's newly appointed post-conviction counsel, Elizabeth Rogan, then filed an amended motion for new trial in which, among other things, she raised several claims of ineffectiveness of trial counsel, alleging that counsel erred by failing: (1) to address "irregularities" in the juror selection process; (2) to object to the State's use of leading questions during its examination of the store clerk victim to establish the crime of kidnapping; (3) to object to inadmissible hearsay testimony from the lead investigating officer; (4) to object to the admission of other robberies as improper character evidence; (5) to request a jury instruction on the lesser-included offense of false imprisonment; and (6) to object to the jury instruction on kidnapping. Leslie also asserted that absent the cumulative impact of trial counsel's errors, he would have been acquitted of all charges.

At the motion for new trial hearing, Leslie's post-conviction counsel, Rogan, explained:

My issues are legal issues, Judge. I don't have witnesses to put on, and there's – there's not going to be an evidentiary portion of this hearing, so the hearing will actually be quite brief, because I have two legal issues I want to raise and perfect the record, in the event that this case goes forward to the [C]ourt of [A]ppeals.

Rogan then presented argument with respect to the trial court's admission of evidence related to the other robberies; the constitutionality of the post-*Garza* amendment to the kidnapping statute, OCGA § 16-5-40 (b) (2) (B); and trial counsel's failure to request a jury charge on the lesser-included offense of false imprisonment on the kidnapping conviction.

In *Godfrey v. State*, we held that a claim that post-conviction counsel provided ineffective assistance at the new trial phase of a criminal proceeding could, under certain circumstances, be raised for the first time on direct appeal. 274 Ga. App. 237, 240-241 (2) (617 SE2d 213) (2005). Like Leslie, the defendant in *Godfrey* had been represented by one attorney at trial, a second attorney at the new trial phase of the proceedings, and a third attorney on appeal. Id. at 240 (2). The defendant alleged that his second attorney provided ineffective assistance by, among other things, failing to call the first attorney as a witness at the new trial hearing. Id. Finding the claim timely raised, we held that "[b]ecause Godfrey's [third attorney] did not undertake his

representation until after the appeal was filed, he did not have the opportunity to raise his claim of ineffective assistance [of the second attorney] before the trial court." Id. at 241 (2). See generally *White v. Kelso*, 261 Ga. 32, 32-33 (401 SE2d 733) (1991) (discussing application of rule, that new counsel must raise claim of previous counsel's ineffectiveness at first possible stage of post-conviction review, in connection with habeas petitions and direct appeals). "Under such circumstances, [we] will generally remand the case to the trial court for an evidentiary hearing on the issue of ineffective assistance of [post-conviction] counsel, unless [we] can determine from the record that the two-prong test for ineffectiveness cannot be met." *Wilson v. State*, 286 Ga. 141, 145 (4) (686 SE2d 104) (2009) (citations omitted).

Here, based on our review of the record, we conclude that Leslie cannot establish that post-conviction counsel's failure to call his trial counsel as a witness at the motion for new trial hearing warrants remand to the trial court.

(a) Leslie argues that trial counsel was ineffective for failing to: (1) challenge the trial court's failure to strike a juror for cause; (2) object to hearsay testimony from the lead investigating officer when he repeated the anonymous tipster's out-of-court statements during his testimony; and (3) object to the admission of other robberies as improper character evidence. To the extent that Leslie asserts that post-conviction

31

counsel's failure to call trial counsel as a witness at the motion for new trial hearing impacted the viability of the foregoing ineffective-assistance claims, these contentions are without merit for the reasons already discussed in Divisions 5, 6, and 7 respectively. See *Chamberlain v. State*, 347 Ga. App. 775, 783 (3) (b) (819 SE2d 303) (2018) ("failure to make a meritless objection cannot be evidence of ineffective assistance of counsel").

(b) Leslie next asserts that his post-conviction counsel erred by failing to call trial counsel as a witness at the motion for new trial hearing to show that trial counsel was ineffective for failing to object to the State's use of leading questions during its direct examination of the store clerk. Leslie highlights that establishing the amount of movement during the crime was "critical" to sustaining his kidnapping conviction. Specifically, he points to the State's attempt to lead the store clerk by asking: "[a]nd now, you were in a different part of the store, and you're saying that he grabbed your neck again, and told you to go to the register?" As previously discussed in Division 1, however, there was sufficient evidence to establish the asportation element of the kidnapping charge apart from this limited testimony. Moreover, Leslie has failed to show how counsel's failure to object to the State's use of leading questions in its examination of the store clerk prejudiced his case, given the same facts were depicted

32

on the surveillance camera footage that was played for the jury at trial. The jurors were therefore able to determine for themselves whether the assailants' conduct depicted in the Ralph's surveillance video matched the store clerk's trial testimony. See *Smith v. State*, 257 Ga. App. 595, 597 (1) (571 SE2d 817) (2002) (evidence, which included still photograph of gunman derived from bank surveillance footage that was shown to the jury, was sufficient to corroborate accomplice's testimony implicating defendant in offenses). As such, this claim is without merit.

(c) Leslie asserts that his post-conviction counsel should have called his trial counsel as a witness as his motion for new trial hearing to show that trial counsel was ineffective for failing to request a jury charge on false imprisonment,[10] as a lesser-included offense, because the State failed to meet its burden to prove the asportation element required to sustain his kidnapping conviction. Leslie raised this claim in his motion for new trial, and argued at the hearing that his trial counsel should have requested the "lesser-included offense of false imprisonment, which, if anything, was tailored more to what actually happened in this case."

---

[10] See OCGA § 16-5-41 (a) ("A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority.").

As previously discussed in Division 1, however, the State presented sufficient evidence to prove the "asportation" element, as required under OCGA § 16-5-40 (b), to support Leslie's kidnapping conviction. As a result, we find no support for this ineffective-assistance claim. See *Davis v. State*, 280 Ga. 442, 443 (2) (629 SE2d 238) (2006) ("In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Where trial counsel does not testify at the motion for a new trial hearing, it is extremely difficult to overcome this presumption.") (citation and punctuation omitted).

(d) Finally, Leslie contends that his post-conviction counsel should have called his trial counsel as a witness at his motion for new trial hearing to demonstrate that his trial counsel rendered ineffective assistance by failing to object to the jury charge on kidnapping. Specifically, Leslie contends that OCGA § 16-5-40 (b) (2) (B) is "unconstitutionally void for vagueness," and "[c]ounsel's failure to mount a proper challenge amounted to ineffective assistance of counsel." Leslie, however, has failed to point to any controlling precedent addressing the constitutionality of the post-*Garza* amendments to the kidnapping statute. Accordingly, "as the objection [Leslie] now asserts that trial counsel should have made has no basis in existing law, failure

34

to make the objection cannot serve as a basis for a claim of ineffective assistance of counsel." *Hayes v. State*, 298 Ga. 98, 104 (2) (b) (779 SE2d 609) (2015).[11]

(9) To the extent Leslie asserts that his post-conviction counsel was ineffective for failing to raise additional issues pertaining to the ineffectiveness of trial counsel in his motion for new trial, that argument does not provide a basis for remand. Leslie's post-conviction counsel raised the issue of Leslie's trial attorney's ineffectiveness in the motion for new trial; thus, any allegations of ineffective assistance not raised in that motion are procedurally barred. *Upshaw v. State*, 257 Ga. App. 199, 201-202 (4) (570 SE2d 640) (2002). "And [Leslie] cannot resuscitate these arguments by 'bootstrapping' them to a claim of ineffective assistance of [post-conviction] counsel." *Godfrey*, 274 Ga. App. at 242 (2) (citation omitted). "Once a

---

[11] And even if the Supreme Court renders an opinion on the constitutionality of OCGA § 16-5-40 (b) (2) (B), it would not impact our analysis of the effectiveness of trial counsel's performance in the instant case as "there is no general duty on the part of defense counsel to anticipate changes in the law[.]" *Lyman v. State*, 301 Ga. 312, 321 (3) (a) (800 SE2d 333) (2017) (citation omitted). See also *Rhoden v. State*, 303 Ga. 482, 486 (2) (a) (813 SE2d 375) (2018) (counsel is not obligated to argue beyond existing precedent and "there is no requirement for an attorney to prognosticate future law in order to render effective representation") (citation and punctuation omitted).

claim is procedurally barred, there is nothing for this Court to review." *Upshaw*, 257 Ga. App. at 202 (4).

Accordingly, we will not consider Leslie's argument that his post-conviction counsel failed to raise additional claims related to trial counsel's ineffectiveness in the motion for new trial, and thus, decline to order the remand of this case for further proceedings on this issue.

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*